UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOSE DERAS,

                Petitioner,                            **MEMORANDUM AND ORDER**
                                                              11-CV-5912 (RRM) (CLP)

    - against -

METROPOLITAN TRANSPORTATION
AUTHORITY,

                Respondent.
------------------------------------------------------------X

ROSLYNN R. MAUSKOPF, United States District Judge

      Plaintiff, Jose Deras ("Deras"), brings this action against his employer, Metropolitan Transportation Authority ("MTA"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII") and 42 U.S.C § 1981. Deras alleges that the MTA discriminated against him on the basis of race and color, and subjected him to a hostile work environment. Presently before the Court is the MTA's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, the MTA's motion to dismiss is GRANTED.

## BACKGROUND[1]

      The MTA is a New York State public benefit corporation that provides public transportation services to the greater New York City area. Deras, an African-American and Hispanic man, was hired by the MTA as a police officer on January 9, 2006, (Am. Compl. (Doc. 6) ¶¶ 13–14), and is currently assigned to District 3 in Brooklyn, New York, (*id*. ¶ 16.) Deras

---

[1] The facts, which are assumed to be true for the purposes of this motion, are taken from the amended complaint filed April 18, 2012 (Am. Compl. (Doc. No. 6)), and documents incorporated by reference therein. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (finding that courts may consider on a motion to dismiss any "written instrument attached to [the complaint] as an exhibit," any "statements or documents incorporated in it by reference" or any document "integral to the complaint" because it "relies heavily upon its terms and effect" (quotation marks omitted)).

1

alleges that, "from the inception of his employment," he has been subjected to discrimination and a hostile work environment on account of his race. (*Id*. ¶¶ 17–18.) His complaint describes several incidents in support of this charge.

In May 2006, Deras received a "command discipline" and was docked two days pay after losing his wallet, which contained his MTA police shield and identification card, for approximately 30 minutes. (*Id*. ¶ 20; *see also* Def.'s Decl. (Doc. 11) at 45 (ECF Pagination).) Deras claims that this punishment was excessive and discriminatory, and that Caucasian and non-Hispanic MTA police officers did not receive similar penalties for losing their MTA police shields and identification cards. (Am. Compl. ¶¶ 21–22.)

On May 7, 2009, Captain John See, Deras's superior officer, "harassed" and "attempted" to discipline Deras for violating the MTA's dress code by having his undershirt showing. (*Id*. ¶ 24). See wanted Deras to write a memorandum, which would be placed in his employment file, explaining why his undershirt was visible. (*Id*. ¶ 25.) Deras alleges that most of the other police officers present at the time, who were primarily Caucasian and non-Hispanic, also had their undershirts showing, but that See took no action against them for the supposed dress code infraction. (*Id*. ¶¶ 26–27). Deras claims that it was only through the intervention of a sympathetic lieutenant that he avoided writing the memorandum. (*Id*. ¶ 28.)

According to Deras, in a "memorandum" dated April 26, 2010, Lieutenant Devlin from District 2 "unfairly reprimanded" Deras "as to the proper way to address a superior officer." (*Id*. ¶ 43; *see also* Def.'s Decl. at 51.)

On August 16, 2010, during an overtime assignment in District 6, Deras lost his "cap device" – a piece of metal inscribed with his shield number and affixed to his uniform hat. (Am. Compl. ¶ 29.) Deras believed that a Caucasian MTA police officer took his cap device "for the

purpose of having plaintiff disciplined," and informed his superior officers of his belief. (*Id*. ¶¶ 25–31.) Deras claim the MTA took no action against the other MTA police officer, despite the alleged existence of video evidence that corroborates Deras's version of events. (*Id*. ¶¶ 32–33.) Instead, on September 10, 2010, Deras received a "Letter of Instruction" from Captain See for failing to safeguard the cap device. (*Id*. ¶ 34; *see also* Def.'s Decl. at 47.) The letter of instruction described the loss of the cap device, noted the rule of conduct Deras violated, and noted that "[f]uture transgressions of a similar nature may result in discipline" and that the "letter will remain a permanent part of your record." (Def.'s Decl. at 47.)

According to Deras, a letter of instruction "can have a negative impact on the ability to receive assignments or promotions." (Am. Compl. ¶ 35.) Deras alleges that Caucasian and non-Hispanic officers have not been given letters for similar offenses. (*Id*. ¶¶ 36–37.) Deras states that "[b]ecause of the complained of actions of defendant and its agents while assigned to District 6, [he] has reduced the amount of overtime assignments that he accepts in District 6" and that "[t]his has adversely affected the amount of overtime assignments that [he] has received." (*Id*. ¶ 38.)

Finally, on November 7, 2010, Deras received another letter of instruction, this time from Sergeant Walls in District 3 for failing to safeguard his MTA parking permit. (*Id*. ¶ 39; *see also* Def.'s Decl. at 49.) This letter of instruction also described the loss of the parking permit, noted the rule of conduct Deras violated, and noted that "[f]uture transgressions of a similar nature may result in discipline" and that the "letter will remain a permanent part of your record." (Def.'s Decl. at 49.) Deras claims that another MTA police officer, Captain Fitzpatrick, received no discipline for losing his MTA parking permit. (Am. Compl. ¶ 40.)

On September 28, 2010, Deras filed a written Charge of Discrimination with the EEOC, alleging that the MTA had discriminated against him based upon his race and color. (*Id*. ¶¶ 5–6; *see also* Def.'s Decl. at 20–21.) In the charge, Deras describes the May 2006 wallet incident, the May 2009 undershirt incident, and the August 2010 cap device incident. On September 7, 2011, the EEOC terminated its investigation and issued Deras a right to sue letter. (*Id*. ¶ 7; Def.'s Decl. at 23.) On December 5, 2011, Deras commenced this action alleging discrimination based on his race and color and a hostile work environment in violation of Title VII, and a violation of § 1981. (Compl. (Doc. 1).) On April 18, 2012, Deras amended his complaint to include additional factual allegations of racial discrimination against the MTA, including allegations of the MTA's alleged "pattern and practice" of treating Caucasian and non-Hispanic officers more favorably with respect to disciplinary matters than African-American and Hispanic ones. (*Id*. ¶¶ 41–42, 44–52.)

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to examine the legal, rather than factual, sufficiency of a complaint. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). As required by Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)).

A court considering a 12(b)(6) motion must "take[ ] factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." *Harris*, 572

F.3d at 71 (citation omitted). A complaint need not contain "detailed factual allegations," but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007)).

To survive a motion to dismiss, a complaint in an employment discrimination lawsuit "need not contain specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Twombly*, 550 U.S. at 569 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 122 S. Ct. 992, 152 L.Ed.2d 1 (2002)) (brackets omitted). However, "the elements of a prima facie case provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible." *Shallow v. Scofield*, No. 11 Civ. 6028 (JMF), 2012 WL 4327388, at *3 (S.D.N.Y. Sept. 21, 2012) (internal quotation marks and brackets omitted). Accordingly, "courts consider these elements in determining whether there is sufficient factual matter in the complaint which, if true, gives the Defendant fair notice of Plaintiff's claim and the grounds on which it rests." *Murphy v. Suffolk County Cmty. Coll.*, No. 10-cv-0251, 2011 WL 5976082, at *5 (E.D.N.Y.

Nov. 29, 2011) (citing *Sommersett v. City of New York*, No. 09 Civ. 5916, 2011 WL 256301, at *5 (S.D.N.Y. June 28, 2011)).

"The standard for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is 'substantively identical' to the 12(b)(6) standard, except that the plaintiff has the burden of establishing jurisdiction in a 12(b)(1) motion." *S & R Dev. Estates, LLC v. Bass*, 588 F.Supp.2d 452, 460 (S.D.N.Y. 2008); *see Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)); *see also Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003) ("Failure of subject matter jurisdiction, of course, is not waivable and may be raised at any time by a party or by the court sua sponte.") In considering a motion to dismiss for lack of subject matter jurisdiction, a district court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted).

## DISCUSSION

### A. Procedural Bars

#### 1. Section 1981 Statute of Limitations

Deras's section 1981 claim based on the May 2006 wallet incident is time-barred. The statute of limitations for a § 1981 race discrimination claim is four years. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382, 124 S. Ct. 1836, 158 L.Ed.2d 645 (2004); *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 318 (E.D.N.Y. 2012). Deras filed his complaint on December 5, 2011, so any claims occurring before December 5, 2007 are untimely under §

1981. The May 2006 wallet incident occurred well before December 5, 2007, and the § 1981 claim predicated upon it is therefore untimely.[2] All other claims brought under § 1981 are timely, but as discussed below, suffer from other deficiencies that require dismissal.

### 2. Exhaustion of Administrative Remedies under Title VII

Deras's claim brought under Title VII alleging hostile work environment, and arising out of the April 2010 reprimand and the November 2010 parking permit incident are also barred. Before a plaintiff can bring a Title VII lawsuit, he must file a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(f)(1). This exhaustion requirement is "an essential element" of the Title VII statutory scheme, *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000), and, as such, "a plaintiff typically may raise in a district court complaint only those claims that either were included in or are 'reasonably related to' the allegations contained in her EEOC charge." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir. 2001).

In his EEOC charge, Deras raised the May 2006 wallet incident, the May 2009 undershirt incident, and the August 2010 cap device incident. Deras failed to present his claims related to the April 2010 reprimand, the November 2010 parking permit incident or the alleged hostile work environment. These claims are unexhausted.

Deras's failures in this regard cannot be excused, however, because the incidents are not reasonably related to the claims asserted in his EEOC charge. Both the April 2010 reprimand and the hostile work environment claims arose before Deras filed his EEOC charge. When newly asserted claims are based on conduct occurring prior to the filing of the EEOC charge, they are considered "reasonably related" to the allegations in the EEOC charge where the claims

---

[2] The continuing violation exception applies to § 1981 claims. *See Clement v. United Homes, LLC*, 10-CV-2122 RRM RLM, 2012 WL 6720701, at *9 (E.D.N.Y. Dec. 27, 2012). As discussed below, because the acts described in Deras's amended complaint are discrete acts, the continuing violation exception does not render this claim timely. Deras does not argue that equitable tolling should apply to this or any other claims.

7

would fall within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402–03 (2d Cir. 1993) *superseded by statute on other grounds as stated in Hawkins v. 115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998); *Madray v. Long Island Univ.*, 10-CV-3841 ADS WDW, 2012 WL 2923500, at *9 (E.D.N.Y. July 16, 2012). The central question in this inquiry "is whether the complaint filed with the EEOC gave the agency adequate notice to investigate discrimination on both bases." *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (internal quotation marks and citations omitted).

Deras's EEOC charge did not give the agency adequate notice to investigate the April 2010 reprimand or the hostile work environment claim. Two of the incidents described in the charge involved Captain See in District 6. (*See* Am. Compl. ¶¶ 24, 34; *see also* Def.'s Decl. at 47.) The third involved action taken by an MTA supervisor in District 9. (*See* Am. Compl. ¶ 20; *see also* Def.'s Decl. at 45.) These asserted allegations did not give the EEOC adequate notice to investigate an informal reprimand that Deras received in April 2010 from a lieutenant in District 2. (*See* Am. Compl. ¶ 43; *see also* Def.'s Decl. at 51.) Furthermore, the EEOC charge itself did not contain any allegations of racially offensive comments, reference repeated conduct or describe the cumulative effect of these individual acts. As such, the allegations in the charge were insufficient to put the EEOC on notice that they should investigate a race-based hostile work environment claim. *See James*, 849 F. Supp. 2d at 315. Therefore, Deras's Title VII discrimination claim based on the April 2010 reprimand and Title VII hostile work environment claim are not reasonably related to the allegations asserted in the EEOC charge, were not administratively exhausted, and must be dismissed.

The November 2010 parking permit incident occurred after Deras filed his EEOC charge. Logically, then, the EEOC could not have been on notice of this claim. However, where an allegedly discriminatory incident occurs after the filing of the EEOC charge, a claim based on can be considered "reasonably related" if the "incidents of discrimination [are] carried out in precisely the same manner alleged in the EEOC charge." *Butts*, 990 F.2d at 1403–04. This is so because "the values associated with exhaustion are not entirely lost because the EEOC would have had the opportunity to investigate, if not the particular discriminatory incident, the method of discrimination manifested in the prior charged incidents." *Id*. This principle hardly applies here. The parking permit incident was in no way carried out in the same manner as the allegations included in the EEOC charge. It involved a different supervisor, different conduct and arose out of wholly different circumstances. Therefore, the November 2010 parking permit incident is not reasonably related to the claims asserted in the EEOC charge.

Simply put, because Deras's Title VII claims based on the April 2010 reprimand and the November 2010 parking permit incident, along with his Title VII hostile work environment claim, are not reasonably related to the claims in the EEOC charge, these claims are unexhausted and must be dismissed.

3. **Timeliness under Title VII**

Deras's Title VII claims arising out of the May 2006 wallet incident and the May 2009 wallet incident are barred by the well-settled "300-day rule." For a Title VII claim to be timely in a plaintiff must file the charge with the EEOC within 300 days of the allegedly unlawful employment practice. 42 U.S.C.2000e–5(e)(1); *see Butts*, 990 F.2d at 1401; *Henry v. Wyeth Pharm., Inc.*, No. 05 Civ. 8106(CM), 2007 WL 2230096, at *28 (S.D.N.Y. Jul.30, 2007).

Federal courts generally dismiss federal claims that were not preceded by the filing of a timely EEOC charge. *Butts*, 990 F.2d at 1401.

Deras filed his charge with the EEOC on September 28, 2010. For his claims to be timely under Title VII, the incidents must have occurred on or after December 2, 2009. The May 2006 wallet incident and the May 2009 undershirt incident both occurred before December 2, 2009, so these claims are untimely.

In response, Deras argues that the acts, when taken together, constitute a "policy or practice" and, as such, represent a "continuing violation." (Pl.'s Opp. Br. (Doc. 12) at 12–13 (ECF Pagination); *see also* Am. Compl. ¶ 44.) Under the continuing violation exception, discriminatory acts occurring prior to the expiration of the 300-day EEOC filing period can be saved "if a plaintiff has experienced a continuous practice and policy of discrimination," in which case "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of [the discriminatory practice or policy]." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) (citing *Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992)) (internal quotations omitted). The Second Circuit has recognized that a continuing violation is found "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994). However, "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period" even if the acts are related. *Morgan*, 536 U.S. at 112. Discrete discriminatory acts include "failure to promote, denial of transfer, or refusal to rehire." *Id*. at 114.

The continuing violation exception does not apply here. Deras does not allege any incidents of discrimination between the May 2006 wallet incident and the May 2009 undershirt

incident, a three year gap that belies the notion that these incidents were connected or ongoing in nature. *See Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 84 (2d Cir. 2001) *abrogated on other grounds National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 153 L.Ed.2d 106 (2002) ("Absent unusual circumstances, a two-year gap is a discontinuity that defeats use of the continuing violation exception."); *Lugo v. City of New York*, 08-CV-5250 FB RML, 2012 WL 3202969, at *3 (E.D.N.Y. Aug. 3, 2012) ("Lugo has not submitted any details on the alleged discrimination he experienced in 2005; nothing in the available facts suggests that these acts were connected to one another and to Lugo's termination approximately two years later."). Furthermore, the incidents described in Deras's complaint involved four different superior officers from four different MTA districts and occurred in diverse contexts, which again precludes the invocation of the continuing violation exception. *See Lugo*, 2012 WL 3202969, at *3 ("The continuing violation exception does not apply where, as here, the incidents involved different conduct by different persons in diverse contexts, and were not repetitive or ongoing in nature." (quotations and citations omitted)); *Anderson v. City of New York*, No. 06-CV-5726, 2012 WL 6720694, at *2 (E.D.N.Y. Dec. 27, 2012) ("[plaintiff's] viable time-barred allegations consist of sporadic, discriminatory actions, taken by different co-workers and supervisors at different trucks. These types of differences 'preclude invocation of the continuing violation doctrine.'").

Deras's conclusory allegations that these represent MTA's policy or practice, (*see, e.g.*, Am. Compl. ¶ 44), is not sufficient to trigger the continuing violation doctrine. *See Valtchev v. City of New York*, 400 Fed. App'x 586, 589 (2d Cir. 2010) ("Although [plaintiff] also accuses defendants of, inter alia, 'practicing age discrimination on a wide scale,' this type of conclusory allegation is not sufficient to raise an issue of a 'specific' discriminatory policy."); *Taylor v. New*

11

*York City Dept. of Educ.*, No. 11-cv-3582, 2012 WL 3150388, at *4 (E.D.N.Y. Aug. 2, 2012) ("[Plaintiff] must point to a specific policy of her employer—such as a biased seniority system or employment test—or to specific, related incidents of discrimination that the employer left unremedied, to allege a continuing violation.").

In short, the incidents described in Deras's complaint are discrete acts and not part and parcel of a continuing violation. Accordingly, the Title VII discrimination claims based on the May 2006 wallet incident and the May 2009 undershirt incident are time-barred.

**B. The Sufficiency of the Remaining Claims**

After applying these procedural bars, the following claims remain: 1) a single Title VII claim arising out of the August 2010 cap device incident, and 2) §1981 claims arising out of the cap device incident, as well as the May 2009 undershirt incident, the April 2010 reprimand incident, and the November 2010 parking permit incident, as well a claim for hostile work environment.[3] As discussed below, plaintiff has failed plausibly to plead these claims and as such, they cannot survive defendant's motion to dismiss.

**1. Hostile Work Environment**

To make out a hostile work environment claim, a plaintiff must establish that: (1) that his workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his work environment; and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer. *Schwapp v. Town of*

---

[3] Deras also describes a number of incidents that he alleges "are part of defendant's pattern and practice of treating Caucasian and non-Hispanic police officers more favorably with respect to disciplinary matters." (Am. Compl. ¶ 44; *see also id.* ¶¶ 41–42, 45–52.) However, district courts in this circuit have routinely held that "an individual cannot maintain a private, non-class pattern-or-practice claim." *Cummings v. Brookhaven Science Assocs., LLC*, No. 11-cv-1299, 2011 WL 6371753, at *12. Deras has not brought a class action. Therefore, to the extent Deras is attempting to assert a private, non-class action pattern and practice claim based on these allegations, such claim fails as a matter of law and is dismissed.

*Avon*, 118 F.3d 106, 110 (2d Cir. 1997).[4] "[I]ncidents of allegedly offensive conduct must also be 'more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 75 (2d Cir. 2001). That is, the conduct alleged "must be severe and pervasive enough to create an environment that would reasonably be perceived, and is perceived, as hostile or abusive." *Schwapp*, 118 F.3d at 110 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 114 S. Ct. 367, 126 L.Ed.2d 295 (1993).) (internal quotation marks omitted). The Supreme Court has held that a work environment's hostility should be assessed based on the "totality of the circumstances." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (citing *Harris*, 510 U.S. at 23). Factors to consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Id*.

"'Hostile work environment' claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." *Curtis v. DiMaio*, 46 F. Supp. 2d 206, 213–14 (E.D.N.Y. 1999) *aff'd*, 205 F.3d 1322 (2d Cir. 2000). "[M]any bosses are harsh, unjust, and rude" but that fact alone does not give rise to a hostile work environment claim. *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002). "[T]o qualify as sufficiently hostile or offensive for a claim under Title VII, an employer's conduct must be . . . severely abusive or disparaging toward the plaintiff." *Ennis v. Sonitrol Mgmt. Corp.*, No. 02-cv-9070 (TPG), 2006 WL 177173, at *9 (S.D.N.Y. Jan. 25, 2006) (citing *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)). "Conduct that is not severe or pervasive

---

[4] As with disparate treatment claims, hostile work environment claims under § 1981 are evaluated under the same standards as Title VII. *See Lopez v. S. B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir. 1987) (§ 1981 and Title VII hostile work environment claims are governed by the same standards).

enough to create an objectively hostile or abusive work environment" cannot support a hostile work environment claim. *See Harris*, 510 U.S. at 21.

The allegations in Deras's complaint are insufficient to state a plausible claim that Deras's workplace was so "permeated with discriminatory intimidation, ridicule, and insult" so as to alter the conditions of his employment. *See Harris*, 510 U.S. at 21. Deras does not allege that anyone at the MTA used racial slurs, engaged in repeated personal attacks or evinced any outright racial hostility. Instead, the allegations in the complaint that directly involve Deras describe five incidents spanning nearly four and a half years where four different superior officers from four different MTA districts reprimanded Deras for purportedly violating different MTA rules. (see Am. Compl. ¶¶ 20–40, 43.) At best, these allegations represent episodic incidents of discipline from stern supervisors, and not discriminatory intimidation sufficiently severe or pervasive to alter the conditions of Deras's work environment or support a hostile work environment claim. *See, e.g., Taylor*, 2012 WL 3150388, at *8 (finding that supervisor's harsh outburst, the denial of a transfer, and two negative performance evaluations were insufficient to state plausible hostile work environment claim); *Chukwueze v. NYCERS*, No. 10-cv-8133 (JMF), 2012 WL 3758452, at *8 (S.D.N.Y. Aug. 30, 2012) (finding that three incidents over the course of a year where plaintiff was chastised or berated publicly were not sufficient to state plausible hostile work environment claim).

Deras also makes a number of allegations where he claims that the MTA acted in a discriminatory manner toward other officers. (*See* Am. Compl. ¶¶ 41–42, 44–52.) A plaintiff making a hostile work environment claim may rely, in part, on instances of hostility which were not directed at him and, in some circumstances, on incidents occurring when he was not present. *Campbell v. County of Onondaga*, 04-CV-1007 NAM/GHL, 2009 WL 3163498, at *20

14

(N.D.N.Y. Sept. 29, 2009) (citing *Schwapp*, 118 F.3d at 111). A plaintiff who relies upon harassment that did not occur in plaintiff's immediate vicinity must establish that he "shared the same 'environment'—broadly conceived—as the person allegedly harassed" and that his own employment was adversely affected by the harassment. *Id*. (quoting *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 189 (2d Cir. 2001). Deras, however, has failed to establish that here.

To begin, four allegations simply describe alleged misconduct by Caucasian officers followed by Deras's bald assertion that a hypothetical African-American employee "would have been dealt with more harshly" if he engaged in the same conduct. (*See* Am. Compl. ¶¶ 48, 50–52.) Such allegations are wholly speculative and cannot support his hostile work environment claim. Deras's remaining allegations fare no better. For example, one allegation describes the discipline that an African-American officer received for not wearing his hat without describing with particularity any other similarly situated Caucasian officer that was treated differently. (*See id*. ¶ 45.) As to other allegations, many involve incidents that occurred before Deras was employed at the MTA. (*See id*. ¶¶ 46–47, 49.)[5] Deras has not alleged whether he witnessed any of these events, whether he was in the same district as any of these officers, whether he worked with them, how the situations or individuals may be comparable, or whether his employment was affected in any way by these incidents. Still other alleged comparators received different punishments for being involved in domestic disputes, situations wholly disparate from those involving plaintiff. (Am. Compl. ¶¶ 41–42.) None of these incidents form proper support for a hostile work environment claim. *See Leibovitz*, 252 F.3d at 190 (holding that plaintiff failed to

---

[5] Indeed, a number of the incidents involving alleged comparators that pre-date Deras's employment are described in detail in the reported decisions of unrelated litigation. *See, e.g., Mazyck v. Metro. Transp. Auth.*, 07 CIV. 3561 DAB, 2012 WL 3865155 (S.D.N.Y. Sept. 4, 2012) (describing Quinn and Thomas incident); *Benjamin v. Metro. Transp. Auth.*, 07 CIV. 3561 DAB, 2012 WL 3188764, at *4 (S.D.N.Y. Aug. 2, 2012) (describing Giel and Benjamin incident; describing Murray and Benjamin incident).

establish hostile work environment where plaintiff was not target of alleged harassment, did not allege that harassment adversely affected the terms and conditions of employment, was not present when harassment supposedly occurred and did not know of harassment while it was ongoing).

   2. **Racial Discrimination**

In order to establish a prima facie case of race discrimination under both Title VII and § 1981, a plaintiff must establish that he: (1) is a member of a protected class; (2) was qualified for the position he held; and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination. *See James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 308 (E.D.N.Y. 2012) (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 (2d Cir. 2000)); *Stewart v. City of New York*, 11 CIV. 6935 CM, 2012 WL 2849779, at *5 n.3 (S.D.N.Y. July 10, 2012) (Section 1981 race discrimination claims analyzed under the same standard as Title VII claims).

Because Deras has not suffered any plausible adverse employment action and has not alleged facts sufficient to raise an inference of discrimination for any of his purported claims, Deras's remaining discrimination claims must be dismissed.

   a. **Adverse Employment Action**

A plaintiff sustains an "adverse employment action" if he endures a "materially adverse change in the terms and conditions of employment." *Das v. Consol. Sch. Dist. of New Britain*, 369 Fed. App'x 186, 189 (2d Cir. 2010) (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). An adverse employment action requires "a change in working conditions . . . more disruptive than a mere inconvenience or an alteration of job responsibilities." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)

(internal quotations omitted). "Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities . . . ." *Id.* (internal quotations omitted). Deras has failed to allege that he suffered an adverse employment action as a result of any these incidents.

Although Captain See allegedly "harassed" and "attempted to have [Deras] disciplined" in May 2009 by requiring Deras to write a memo for inclusion into his employment file, (Am. Compl. ¶¶ 24–25), Deras was not required to write the memo, (*id.* ¶ 28.) Similarly, Deras alleges that he was unfairly reprimanded in April 2010 by Lieutenant Devlin, (*id.* ¶ 43.), but does not allege whether he was subject to any discipline as a result. As for the loss of the parking permit in November 2010, Deras alleges that the letter of instruction he received as a result "will remain a permanent part of his record," (*id.* ¶ 39), and that letters of instruction "can have a negative impact on the ability to receive assignments or promotions," (*id.* ¶ 35). However, plaintiff does not allege that he suffered any adverse consequences as a result of this incident. It is well settled that, standing alone, "criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action." *Weeks v. New York State (Div. of Parole)*, 273 F.3d at 86; *Honey v. Cnty. of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002) ("[C]ourts in this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation."); *Castro v. N.Y.C. Bd. of Educ. Pers.*, No. 96 Civ. 6314(MBM), 1998 WL 108004, at *7 (S.D.N.Y. Mar. 12, 1998) ("[A]lthough reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of

employment conditions."). Thus, none of these incidents support a plausible discrimination claim.

For similar reasons, the Letter of Instruction arising out of the cap device incident fails to quality as an adverse employment action. Moreover, Deras alleges that because of the August 2010 cap device incident in District 6 and the letter of instruction he received, "[he] has reduced the amount of overtime that he accepts in District 6," which "has adversely affected the amount of overtime assignments that [he] has received." (*Id.* ¶ 38.) Voluntarily refusing overtime, however, is not an adverse employment action. *Cf. Lockhart v. Hofstra Univ.*, 123 Fed. App'x 31, 33 (2d Cir. 2005) (finding that plaintiff could not establish that he suffered adverse employment action where plaintiff was offered overtime opportunities but declined to accept them).

Simply put, Deras has failed to allege that he suffered any adverse employment action as a result of any of the timely incidents. Accordingly, his remaining racial discrimination claims must be dismissed.

### b. Inferences of Discrimination

Furthermore, Deras has failed to allege any facts that give rise to a plausible inference of discrimination for any of the claims that survive procedural bars. "A plaintiff may raise an inference of discrimination by showing that the employer subjected him to disparate treatment, meaning that the employer treated the plaintiff less favorably than a similarly situated employee outside of the protected group." *Benjamin,* 2012 WL 3188764, at *8 (S.D.N.Y. Aug. 2, 2012) (citing *Int'l Broth. of Teamsters v. U.S.*, 431 U.S. 324, 335, 97 S. Ct. 1843, 52 L.Ed.2d 396 (1977)). "This means that a plaintiff must show that he shared sufficient employment characteristics with the comparator so that they could be considered similarly situated in all

material respects." *Hernandez v. City of New York*, 11-CV-3521 SJ RER, 2013 WL 593450, at *4 (E.D.N.Y. Feb. 13, 2013) (citing *Russell v. County of Nassau*, 696 F. Supp. 2d 213, 233–34 (E.D.N.Y.2010)). "[S]imilarly situated in all material respects does not mean all respects generally, but rather sufficiently similar to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *Id*. (quoting *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001)). "Examples of what constitutes a 'material respect' are holding the same positions of roughly the same rank, and being subject to the same performance review and disciplinary standards." *Id*. (citing *Graham v. Long Island R.R.*, 230 F.3d, 34, 39 (2d Cir. 2000); *Louis v. Brooklyn Botanical Garden*, No. 10–CV–5406, 2011 WL 3857127, at *7 (E.D.N.Y. Sept. 1, 2011)).

The allegations concerning Captain See's attempt to discipline Deras in May 2009 do not give rise to inference of discrimination since, by Deras's own allegations, other African-American and Hispanic officers present at the time did not receive the same treatment as Deras. (*See* Am. Compl. ¶ 26 ("Most of the other police officers present at the time, who were *primarily* Caucasian and non-Hispanic, also had their undershirts showing" (emphasis added)).) With respect to the April 2010 reprimand, Deras offers no facts or allegations describing how his treatment differed from similarly situated officers. As for the August 2010 cap device incident, although Deras states that a Caucasian officer lost his cap device and was not disciplined, while a different African-American police officer lost his cap device at the same time as was disciplined, (*see* Am. Compl. ¶ 37), Deras has failed to describe the context of those incidents or the discipline that was involved, and thus has failed to allege facts to support a plausible inference of discrimination. *See Hernandez*, 2013 WL 593450, at *5 (dismissing § 1981 discrimination claim where plaintiff failed to provide details about the rank of the comparators, the underlying facts of

19

the incidents and the post-incident treatment of the comparators). Finally, putting aside that Deras has not alleged the race of Captain Fitzpatrick, (*see* Am. Compl. ¶ 40), any difference in disciplinary treatment between Deras and Captain Fitzpatrick over the loss of their respective parking permits could easily be explained by the fact that Captain Fitzpatrick significantly outranks Deras. In other words, given this difference in rank, Deras has not shown that he was similarly situated in all material respects with Captain Fitzgerald to support at least a minimal inference that the letter of instruction he received for losing his parking permit was attributable to discrimination. In short, Deras has failed to raise an inference that these incidents were motivated by discrimination. He has hardly "nudged [his] claims across the line from conceivable to plausible" and thus, his remaining discrimination claims, therefore, must be dismissed. *See Twombly*, 550 U.S. at 570.

## CONCLUSION

For the reasons set forth above, MTA's motion to dismiss the amended complaint is granted in its entirely, and plaintiff's amended complaint is dismissed. The Clerk of Court is directed to enter judgment accordingly, and close this case.

SO ORDERED.

Dated: Brooklyn, New York
      March 22, 2013

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge